**ABIGAIL TUCKER**                                                                 **PLAINTIFF**

**v.**

**CITY OF PRINCETON, KENTUCKY**                                        **DEFENDANT**

## MEMORANDUM OPINION

This matter is before the Court upon Defendant's Motion for Summary Judgment (DN 13).

Plaintiff has filed a response (DN 16). Defendant has filed a reply (DN 17). This matter is now ripe

for adjudication. For the following reasons, Defendant's motion is GRANTED.

## BACKGROUND

Plaintiff, Abigail Tucker, was hired as a patrolman with the City of Princeton Police

Department on June 22, 2001. She was assigned the midnight shift and Rocky Howton was assigned

as her supervisor.

Plaintiff states that Howton was helpful and complimentary for the first several months of

her employment. However, Plaintiff alleges that beginning in the fall of 2001, Howton became

romantically interested in her. She states that Howton invited her to join him in his hotel room when

he was away at in-service training and made cakes for Plaintiff and her daughter. Howton also

allegedly tried to hold Plaintiff's hand during a movie and made comments to the affect of "I wish

I could find a woman just like you." Plaintiff told Howton she was interested in friendship only.

Plaintiff explained that after she talked to Howton he began to "knit-pick little things" about

Plaintiff's performance and "went off" on her for no reason at least twice: once at the local jail and

once on a routine traffic stop. Plaintiff states that when she mentioned these incidents to other

officers, they responded that this behavior was typical of Howton. Plaintiff states she reported his

behavior to the then police chief, L.D. Robertson.  Robertson advised Plaintiff to file a complaint; however, she feared retaliation so she did not file a complaint.

In October 2002, sometime after Plaintiff's report of his behavior to Robertson, Howton was transferred to the County Attorney's office.  Plaintiff stated that Howton's harassment stopped until April 2005, when Howton was named as Assistant Chief under Brian Ward, successor to L.D. Robertson.  After Howton became Assistant Chief, Plaintiff received several personnel counseling records in her personnel file.  These documents were intended to document non-disciplinary corrective counseling.  Plaintiff asserts that other male officers who committed similar infractions were not issued counseling statements.

On August 25, 2003, Plaintiff injured her shoulder  when her four-wheeler struck a tree in an alcohol-related accident.  She was absent from work until January 15, 2004.  On June 12, 2004, Plaintiff re-injured her shoulder after firing a shotgun because she was required to qualify with a shotgun for her employment.  She then was absent from work until February 22, 2005.  She was again absent from work from September 11, 2005 until March 1, 2006.  She remained at work until May 21, 2006, when she again took leave until July 27, 2006. Plaintiff missed approximately 21 months of work during this three year period.

In 2004, Tim McLaughlin was promoted to sergeant by then chief  Ward. McLaughlin had been hired by the Princeton Police Department on October 1, 2001, nearly three months after Plaintiff.  Ward stated he recommended McLaughlin for promotion, rather than Plaintiff, because Plaintiff had been absent from work and McLaughlin was a "model officer."

Plaintiff was promoted to Rank 4 on March 11, 2007, over five years after she was hired.  Plaintiff was hired as a Rank 2 patrol officer and was raised to Rank 3 in December 2001.  Brian

Ward, Police Chief from 2003 to 2007, stated Plaintiff's delay in raise to Rank 4 was due to her extensive absences because of her injury and the fact that her injury initially resulted from an alcohol-related incident. Larry Shultz was hired as a Rank 2 patrolman in December 2005. He was promoted to Rank 3 six months later and was promoted again to Rank 4 eighteen months after he was hired.

Don Weedman was appointed Police Chief in 2007 by the new mayor, Gale Cherry. In June 2008, there was a vacant sergeant position for which Weedman recommended Larry Shultz. Weedman stated he recommended Shultz because of his prior supervisory experience and because he was well liked. Weedman stated he considered all eligible patrol officers. Mayor Cherry stated that when giving the promotion to Shultz she considered Plaintiff's involvement in a specific "possum incident" involving the police department and the Department of Fish and Wildlife noting that the incident reflected poor judgment by Plaintiff.

Plaintiff filed a charge with the Equal Employment Opportunity Commission alleging sexual discrimination based only on the June 2008 promotion of Shultz. The EEOC granted Plaintiff a notice of her right to bring suit on November 19, 2008. Plaintiff filed suit on December 15, 2009. Plaintiff raises claims of discrimination under Title VII of the Civil Rights Act of 1964 and discrimination under the Kentucky Civil Rights Act for failure to promote and for a hostile work environment, as well as claims of negligent supervision and negligent retention of Howton. Defendant moves the Court for summary judgment as to each claim.

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.,* 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

### DISCUSSION

Plaintiff has alleged claims under both Title VII and the Kentucky Civil Rights Act ("KCRA"): Count 1 of Plaintiff's Complaint alleges discrimination under Title VII for failure to promote in 2008 alone, while Count 2 alleges discrimination in violation of KCRA for failure to promote and for hostile work environment. Claims brought under KCRA have consistently been construed as synonymous with claims raised under Title VII; therefore, the analysis of each is the same. *Williams v. Wal-mart Stores, Inc.*, 184 S.W.3d 492, 495 (Ky. 2005). Plaintiff has also

brought two tort claims against Defendant, negligent supervision and retention, alleging Defendant knew of Howton's sexual harassment of Plaintiff and took no action. The Court will address Plaintiff 's claims for discrimination first.

## I. Discrimination based on Failure to Promote

Plaintiff alleges in her Complaint that she was not offered the opportunity to apply for a promotion because of her gender and that male officers were promoted over her. Plaintiff alleges three specific failures to promote: 1) she was not promoted from a Rank 3 to a Rank 4 patrol officer for over five years, while male officers were promoted in less time; 2) she was not promoted to sergeant in 2004[1] while a male officer, Tim McLaughlin, was promoted; and 3) she was not promoted to sergeant in 2008 while a male officer, Larry Shultz, was promoted.

A claim of gender or sex discrimination may be proved through either direct or circumstantial evidence. *Williams*, 184 S.W.3d at 495. If a plaintiff is without direct evidence, the plaintiff must satisfy the burden-shifting test of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.* Under the *McDonnell Douglas* framework, the plaintiff must first present a prima facie case of gender discrimination. 411 U.S. at 802. Once a prima facie case is presented, the defendant must then articulate a legitimate, nondiscriminatory reason for its decision. *Id.* If the defendant meets its burden, the burden shifts back to the plaintiff to establish that the stated reason was merely a pretext for discrimination. *Id.* at 804.

In order to establish her prima facie case, Plaintiff must prove:

(1) she is a member of a protected group; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position; and (4) she was replaced

---

[1] Plaintiff's complaint alleges she was not promoted to sergeant in 2005. The record reflects the promotion at issue occurred in July 2004.

> by a person outside the protected class, or similarly situated non-protected employees
> were treated more favorably.

*Grace v. USCAR*, 521 F.3d 655, 677 (6th Cir. 2008) (citing *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir.2004)). Defendant has conceded that Plaintiff could prove her prima facie case as to each specific instance of failure to promote. However, Defendant asserts a legitimate non-discriminatory reason as to each specific instance and argues Plaintiff is unable to show that the stated reason is merely pretext.

### a. Failure to Promote from Rank 3 to Rank 4

Plaintiff asserts she was not promoted to Rank 4 for over five years, while male officers were promoted to Rank 4 within eighteen months of being hired. Defendant states that Plaintiff was not promoted sooner due to her extensive absences and the fact that the accident during which she injured her shoulder involved alcohol. Ward, the police chief from 2003 to 2007 when Plaintiff was promoted, explained that he did not promote her previously "mainly because she had been off for so long, and [he] didn't feel she deserved a promotion at that time" and because the ATV accident was alcohol related. Ward Dep. 108-111, Sept. 10, 2009. This is a legitimate, nondiscriminatory reason for failing to promote Plaintiff.

The burden now shifts to the Plaintiff to establish the stated reason is mere pretext. In order to meet this burden "the plaintiff must produce sufficient evidence from which the jury may reasonably reject the employer's explanation." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1083 (6th Cir.1994) (citing *Gaworski v. ITT Commercial Finance Corp.*, 17 F.3d 1104, 1109 (8th Cir.1994)) (overruled on other grounds by *Geiger v. Tower Automotive*, 579 F.3d 614 (6th Cir. 2009). The plaintiff must show "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [the action], or (3) that they were insufficient to motivate

[the action]" in order to establish pretext. *Id.* at 1084 (quoting *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 513 (7th Cir.1993)).

Here, there is evidence that the stated reasons were based in fact: the record reflects Plaintiff was absent nearly two years during the five year period between her promotion to Rank 3 and her promotion to Rank 4. Plaintiff also testified that the ATV accident causing the initial injury to her shoulder was alcohol-related. Tucker Dep. 7, July 22, 2009.

Plaintiff asserts that Larry Shultz was hired as a Rank 2 patrolman and was promoted to Rank 3 within six months and to Rank 4 within eighteen months of his hiring. Shultz had received a "Verbal Counseling" memorandum for failing to follow certain procedures prior to his promotion to Rank 4. Shultz was evaluated for the period from July 1, 2006 through December 31, 2006 and was given an average score of "2." His evaluation was conducted by Rater, Lt. James Mason; Senior Rater, Maj. Rocky Howton; and Reviewer, Chief Ward. During the same period Plaintiff was evaluated and received a "1.88" rating. She was evaluated by Rater, Sgt. Craig Young; Senior Rater Lt. James Mason; and Reviewer Maj. Rocky Howton.

The Court finds the evidence of Shultz's promotion is not proper evidence of pretext. In order to make such a comparison between Plaintiff and Shultz, they must be "similarly situated." *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992). Individuals must have dealt with the same supervisor and engaged in the same conduct without distinguishing circumstances in order to be considered "similarly situated." *Id.* In this case, the evaluations were rated by different supervisors, therefore, Plaintiff and Shultz were not "similarly situated." Furthermore, while both Plaintiff and Shultz have conduct which may have counseled against promotions, the conduct was

not the same conduct.[2]

Plaintiff also emphasizes the fact that Howton wrote several paragraphs on her review. Plaintiff reasons that he did so because he disliked her since she would not engage in a romantic relationship with him. Plaintiff argues this is further evidence of pretext. There is no testimony that reflects that the comments by Howton or treatment of Plaintiff by Howton were considered by Ward in his decision to not promote Plaintiff until 2007. Ward specifically testified that he considered her absences and the cause of her initial shoulder injury in making his decision. Additionally, the evaluation and comments by Howton referenced by Plaintiff were made immediately prior to Plaintiff's promotion. Therefore, the record reflects that these comments did not result in Plaintiff failing to be promoted.

Review of the record reveals Plaintiff has failed to present evidence from which the jury may reasonably reject the employer's explanation. As demonstrated, the stated reason has basis in fact, and Plaintiff has failed to show that the stated reasons did not actually motivate the action, or that they were insufficient to motivate the action. As such, summary judgment is appropriate.

**b. Failure to Promote Sergeant in 2004**

Plaintiff next asserts she was not promoted to sergeant in 2004, although she was qualified for the promotion. She alleges she was not promoted because of her gender. As stated, Defendant concedes she has established a prima facie case of discrimination. Defendant states that she was not

---

[2] Plaintiff appears to argue that Defendant should have considered Shultz's personnel file more closely and should not have promoted him based on the counseling records therein. It is not the role of this Court to determine what factors Defendant should have considered or whether Defendant should have considered Shultz counseling memorandum. The reasons for Shultz's promotion are not the subject of this claim. This Court is charged only with determining whether Plaintiff has established proof that the stated reason for not promoting her was merely pretext.

promoted due to her absences related to her shoulder injury and that the individual promoted, Tim McLaughlin, was more qualified for promotion. Brian Ward was police chief at the time McLaughlin was promoted to sergeant. When asked why he chose McLaughlin over Plaintiff he stated:

> Well, for one, Abby was gone for a long period of time for an injury, so she hadn't been to work for quite some time. Tim, he was just – at that time, he was just your model officer. . . He was immaculate, he stood tall, he looked good, his equipment was always clean, always well taken care of. He was doing basically the job as a sergeant when he was still a patrolman, looking over paperwork, making sure log sheets were filed, things of that nature. He was just an outstanding officer. I mean, he was former military, and he just had that bearing to him that just made him stand out above the rest.

Ward Dep. 65. Ward further explained that he based his recommendation on his daily observations and was not able to gauge Plaintiff's performance because she was absent due to her injury. Ward Dep. 67. Plaintiff's absence is a legitimate nondiscriminatory reason; therefore, the burden shifts to Plaintiff to establish this stated reason was merely pretext.

The record reflects that McLaughlin became an acting sergeant in 2003. At that time he was wearing sergeant stripes, but was still being paid as a patrolman since he did not yet have three years of consecutive employment. McLaughlin was fully promoted in July 2004. Plaintiff was absent from the date of her ATV accident in August of 2003 until January 15, 2004. It was during this time that McLaughlin was promoted to acting sergeant. Plaintiff was again absent from June 12, 2004 until February 22, 2005. It was during this time that McLaughlin was fully promoted. The record therefore reflects that the stated reason has a basis in fact. Plaintiff must now show that the stated reasons did not actually motivate the action, or that they were insufficient to motivate the action in order to establish pretext.

Plaintiff asserts that Howton asked Jason Key about having Tim McLaughlin promoted to

sergeant while she was out for her initial shoulder injury following her ATV accident. Plaintiff also states that Howton was good friends with McLauglin and Plaintiff emphasizes McLaughlin was the "best man" at Howton's wedding. This does not provide evidence of discriminatory motive. This provides an inference that Howton may have favored McLaughlin over Plaintiff, or even others, because of their friendship but does not provide an inference that he favored McLaughlin over Plaintiff because he was male. In addition, Ward made the promotion decision.

Plaintiff also asserts that she was forced to qualify with a shotgun which caused her to re-injure her shoulder resulting in her absence during which McLaughlin was fully promoted to sergeant. Although not expressly stated, the inference appears to be that Ward or Key, Plaintiff's supervisors, ordered to her qualify with shotgun knowing it would cause injury resulting in her absence and this absence would provide an excuse to promote McLaughlin, a male, rather than Plaintiff. The evidence does not support this argument. Plaintiff has presented no evidence that she was the only individual that was required to qualify with the shotgun, or that she was required to qualify using her left shoulder rather than her right.[3] Additionally, McLaughlin had already been tentatively promoted to acting sergeant while Plaintiff was absent due to her initial injury and there is no evidence that Ward did not intend to fully promote McLaughlin after he had acquired the three years of employment required.

Plaintiff has failed to show that the stated reasons did not actually motivate the action, or that they were insufficient to motivate the action in order to establish pretext. As such, summary judgment is appropriate.

---

[3] Plaintiff, although left eye dominant, used her right hand to qualify with her handgun, but chose to qualify for shotgun with her left side, the shoulder which had been previously injured. Tucker Dep. 10-11.

### c. Failure to Promote to Sergeant in 2008

Finally, Plaintiff asserts that she was not promoted in 2008, because of her gender, although she was qualified for the position. As stated, Defendant again concedes Plaintiff has established a prima facie case. Defendant asserts Larry Shultz was promoted rather than Plaintiff because of his prior experience as both a sergeant and a chief in other departments and Plaintiff's discipline for chain-of-command issues in the past had raised issues about her judgment and leadership skills.

Don Weedman, who took Ward's place in 2007, was the police chief when this promotion took place. Weedman testified that he considered "overall experience, the understanding [he and Mayor Cherry] had of what a decision-making position would be, a supervisor position would be, how they had handled situations in the past, how they handle people" when making his recommendation for promotion. Weedman Dep. 24, Feb. 24, 2010. Weedman stated he recommend Shultz for promotion because "[h]e had been a supervisor at other police departments. And he got along well with people. . . . his work effort was geared toward the overall good of the department." Weedman Dep. 24. Weedman also explained why he did not recommend Plaintiff:

> There had been some situations where [Plaintiff] became involved in circumstances that she felt that she had a part in and was actually other officers who were doing the work, doing the investigations or whatever. She would become involved in it, and it caused some problems in the overall work.

Weedman Dep. 26. Weedman cited the "possum incident" as an example. Weedman Dep. 26-32.

The final decision maker, Mayor Cherry, also testified that she considered "behavior patterns and what [she and Weedman] have observed . . . behavior patterns that are inconsistent with good management and with good decision-making." Cherry Dep. 54. Cherry cited the "possum incident" as an example of behavior inconsistent with good decision-making. Cherry Dep. 55-56. Defendant has set forth a legitimate, nondiscriminatory reason for its failure to promote Plaintiff which has a

11

basis in fact. The burden now rests with Plaintiff to establish that the stated reasons are merely pretext.

The record reflects Shultz had prior supervisory experience as a sergeant in Central City, a chief in Drakesboro, and a chief at Mortons Gap. Shultz had five years and one month law enforcement experience, but only thirty months of that time was with the Princeton Police Department. Plaintiff had been hired on June 21, 2001, and prior to that had worked at Eddyville Police Department for two months and Fulton Police Department for four months. Plaintiff asserts she had seven years and six months of total law enforcement experience, two years and five months more experience than Shultz. Plaintiff argues this is evidence of pretext. However, the Court notes Plaintiff was absent from work for nearly two years, cumulative, after her shoulder injury. Applying Plaintiff's absences, Shultz and Plaintiff would have had approximately the same amount of experience, although Plaintiff had no prior supervisory experience. This evidence is not enough to overcome Defendant's stated, nondiscriminatory reason for not promoting Plaintiff.

Plaintiff further argues that the stated reason was pretext because Defendant treated her differently than her male counterparts by considering her past employment history without also considering that of Shultz. It is not the role of this Court to determine what factors Defendant should have considered in making its employment decisions. It is only for this Court to determine whether the stated reason for failing to promote Plaintiff was pretextual. The record reflects that Weedman looked at the Princeton Police Department personnel file of each individual considered for promotion. Weedman Dep. 12:9. There is no evidence that Weedman looked at the personnel file of Plaintiff from her prior employers, while not considering the personnel file of Shultz from his prior employers.

There is also significant discussion and debate regarding the "possum incident" which was cited by both Weedman and Cherry as an example of a particular behavior. Plaintiff asserts that there is dispute as to the facts of the incident; however, the Court notes the facts of the incident are irrelevant. There is evidence that it has a basis in fact: the incident occurred and was testified about by both Weedman and Plaintiff who were both present. The Sixth Circuit has held that "[w]hen an employer reasonably and honestly relies on particularized facts in making an employment decision, it is entitled to summary judgment on pretext even if its conclusion is later shown to be 'mistaken, foolish, trivial, or baseless.'" *Chen v. Dow Chem. Co.*, 580 F.3d 394, 401 (6th Cir. 2009). Here, Weedman and Cherry honestly relied on the facts of the "possum incident" in making their employment decision, while also considering Shultz's prior supervisory experience. Additionally, Plaintiff has not established that it was not the actual motive for not promoting or that it was insufficient motivation for not promoting her. Summary judgment is granted.

## II. Hostile Work Environment under the KCRA

Plaintiff has alleged Defendant created a hostile work environment in violation of KCRA. The KCRA does not contain a statute of limitations; however, Kentucky Courts have held that the five year statute of limitations in KRS § 413.120(2) is applicable. *Kentucky Com'n on Human Rights v. City of Owensboro*, 750 S.W.2d 422, 423 (Ky.1988). Defendant argues that because Plaintiff filed this lawsuit on December 15, 2008, any claim arising prior to December 15, 2003, is barred by the statute of limitations.

However, the Kentucky Supreme Court has explained that prior incidents, outside the five year statute of limitations, may be bootstrapped onto the sexual harassment claim under the continuing violation doctrine. *Ammerman v. Board of Educ., of Nicholas County*, 30 S.W.3d 793,

798 (Ky. 2000). The court stated:

> In a sexual harassment lawsuit, the limitations period begins on the date the act of harassment occurs. Yet if the discriminatory act constitutes a "continuing violation," an equitable doctrine often used in hostile environment claims, then the limitations period begins to run anew with each succeeding discriminatory act. Generally, "those violations preceding the filing of the complaint by the full limitations period are foreclosed," yet the continuing violation doctrine may allow a plaintiff to bootstrap incidents that occurred outside the statute of limitations onto the sexual harassment claim.

*Id.*

The *Ammerman* Court, relying on the Fifth Circuit, set forth three factors in determining whether the continuing violation doctrine applies. *Id.* at 798-99. First, "whether the alleged acts involve the same type of discrimination; [second,] the frequency of the acts, i.e., whether they are recurring or more in the nature of an isolated employment decision; and [third] whether they have a degree of permanence, such that an employee should have realized the need to assert her rights." *Clark v. Alcan Aluminum Corp.*, 41 Fed.Appx. 767, 774 (6th Cir. 2002) (citing *Ammerman,* 30 S.W.3d at 798-99.); *Waltman v. International Paper Co.*, 875 F.2d 468, 476 (5th cir. 1989).

Here, the alleged acts involve the same type of discrimination which tends to connect them as a continuing violation. Second, the acts alleged are of a recurring nature, rather than an isolated employment decision. Although Plaintiff alleges several isolated employment decisions such as failure to promote, Plaintiff also alleges acts of a recurring nature, e.g., negative treatment by Howton after refusing his alleged advances and the placement of an offensive poster on the bulletin board. Finally, the acts here do not have a degree of permanence. As described by the Fifth Circuit, "[i]f the person harassing a plaintiff leaves his job, the harassment ends; the harassment is dependent on a continuing intent to harass" and therefore does not have the same degree of permanence as loss of promotion which remains even after the person who denied the promotion has left. *Waltman*, 875

14

F.2d at 476. Plaintiff testified that after Howton was transferred the harassment stopped. Tucker Dep. 73-75. There is not a high level of permanence, thus it is less likely Plaintiff should have realized the need to assert her rights. Based on consideration of these three factors, the Court finds this is a continuing violation. The Court will, therefore, consider the evidence of hostile work environment predating December 15, 2003, even though Plaintiff may not recover for those acts.

In order to succeed on a claim of co-worker harassment as alleged by Plaintiff, she must show:

> (1) she is a member of a protected class; (2) she was subjected to unwelcomed sexual harassment; (3) the harassment was based on her sex; (4) the harassment unreasonably interfered with her work performance and created a hostile work environment; and (5) Defendant knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action.

*Grego v. Meijer, Inc.*, 239 F.Supp.2d 676, 680 (W.D.Ky. 2002) ( citing *Blankenship v. Parke Care Ctrs., Inc.*, 123 F.3d 868, 872 (6th Cir.1997)). There is no dispute Plaintiff is a member of a protected class; however, Defendant argues Plaintiff is unable to prove the remaining elements of a hostile work environment sexual harassment claim.

A hostile work environment is one "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Williams v. General Motors Corp.*, 187 F.3d 553, 560 (6th Cir.1999) (citing *Harris v. Forklift Systems*, 510 U.S. 17, 21 (citations and quotation marks omitted)). "[T]he harassment must also be both objectively and subjectively offensive as determined by 'looking at all the circumstances.' *Ammerman*, 30 S.W.3d at 798 (quoting *Harris*, 510 U.S. at 23). In "looking at all the circumstances" the court must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere

offensive utterance; and whether it unreasonably interferes with an employee's work performance."
*Harris*, 510 U.S. at 23.

Looking at all the circumstances and considering the factors stated above, Plaintiff has failed to provide sufficient evidence to survive Defendant's motion for summary judgment. Plaintiff in her response references her treatment by Howton and placement of an inappropriate poster on the department bulletin board. As to treatment by Howton, the record reflects he never made any explicit sexual advances toward her, or lewd or suggestive comments, and did not touch her in a sexual manner. Tucker Dep. 70-71. Plaintiff only claims Howton attempted to hold her hand when she went with him to a movie, while she was on a leave of absence for her shoulder injury, but stated that after she rebuffed him he never attempted to touch her again. Tucker Dep. 104, 100-11. This action took place outside of work while Plaintiff was not on active duty. Tucker Dep. 103. Tucker has presented no evidence that this action created a hostile work environment since she was not at work at the time. Furthermore, she testified this occurred after her accident in 2003 and Howton did not harass her again until after April 2005. Tucker Dep. 102-03, 107-08; 73-75. She then testified that after 2005 Howton's harassment was in the form of personnel counseling records in her file. Tucker Dep. 98-99. There is no evidence linking the personnel counseling records to Plaintiff's refusal to hold Howton's hand and, as discussed below, the personnel counseling records themselves do not reflect sex based discrimination.

Furthermore, the treatment of Plaintiff by Howton during the relevant time period, 2003 to 2008, reflects actions which were made by Howton equally against all the officers not just Plaintiff. For example, Plaintiff testified that after he had an outburst at her at the jail the other employees commented that this behavior was typical of Howton. Tucker Dep. 61. Plaintiff also testified that

Howton altered her paper work, but also that he altered the paperwork of Trent Fox and Ron Hilard as well. Dep. 151-53. Plaintiff testified that Howton knit picked at little things; however, former Princeton Police Department officer Brent McDowell testified that Howton had problems getting along with all of the officers, correcting them for minor issues and generally causing problems throughout the whole police force. McDowell Dep. 7-8, 10-11, Jan. 28, 2010. McDowell stated "he just seemed to be on everybody all the time." McDowell Dep. 7:17-18. Brian Ward has similarly testified. Ward Dep. 102-03. Ward explained "[Howton] can be the nicest guy you'd ever want to meet today; and tomorrow, he's just a total butt. The third day, it's like nothing ever happened. It's just back and forth and back and forth, and that's with everybody." Ward Dep. 102:4-9. The record reflects that Howton mistreated not only Plaintiff, but several other officers at the Princeton Police Department at different times throughout his career.

Plaintiff also suggests that after Howton became assistant chief he wrote her up more frequently than others. Tucker Dep. 98-99.[4] The record reflects that Plaintiff received five personnel counseling records over the course of fifteen months and that other male officers received more severe discipline. Jason Key received three personnel counseling records, four reprimands, and a suspension. Paul Henry received two personnel counseling records, two reprimands and a suspension. Plaintiff has failed to establish that any alleged mistreatment of her by Howton was because of her sex or because she rejected Howton's alleged sexual advances earlier in 2001 and 2002.

---

[4] Tucker also testified that there was a joke about employees taking bet on who Howton wrote up first after he was promoted to assistant chief. Tucker Dep. 99. Tucker testified that she said "Well, I'm the winner," after she was written up and "everybody made a joke out of it." Tucker Dep. 99. The Court notes this evidence reflects a lack of subjective offense which is required in order to sustain a charge of hostile work environment.

Plaintiff also cites the posting of a poster which read "Put your big girl panties on and deal with it." Plaintiff alleges this is evidence of a hostile work environment. However, after the poster was removed Plaintiff wrote on it "That's all I own is big girl panties," and placed the poster in Howton's mailbox.[5] First, this singular incident, even in the context of the harassment that allegedly occurred prior to 2003, is not sufficiently pervasive or severe to rise to the level of a hostile work environment. Additionally, Plaintiff's comment regarding the poster after it was removed evidences a lack of subjective offense which is required in order to sustain a charge of hostile work environment.

Again, considering all the circumstances and the prior context, Plaintiff has not presented sufficient evidence that any actions alleged were because of her sex. Furthermore, Plaintiff has not presented sufficient evidence of a work environment permeated with discriminatory intimidation, ridicule, or insult that is so severe or pervasive as to alter the conditions of her employment or create an abusive working environment. Summary judgment is granted.

### III. Negligent Supervision and Retention Claims

Plaintiff alleges in Counts III and IV of her Complaint that the City is liable to her because it negligently supervised Howton and negligently retained him as a police officer. Specifically, Plaintiff "has asserted that the City of Princeton knew or should have known that Rocky Howton was creating a hostile work environment, and it failed to supervise and control him, and in addition, allowed Rocky Howton's employment to continue after it knew such a hostile working environment

---

[5] Plaintiff allegedly believed Howton had posted the poster. The record reflects the then mayor, Vicki Hughes, gave the poster to then police chief, Brian Ward. Ward testified that he gave his copy to Penny Guess, the police department clerk. The record is unclear who placed it on the bulletin board; Howton denies doing so.

existed." Pl.'s Resp. Br. 33. Defendant argues that the Kentucky Workers' Compensation Act ("KWCA") precludes these claims against Defendant.

In *Grego v. Meijer, Inc.*, the court held, "[t]he statute and Kentucky case law interpreting the statute make it clear that the Workers' Compensation Act provides the exclusive remedy where a covered employee is injured by her employer's negligent actions." 239 F.Supp.2d 676, 683 (W.D.Ky.2002). "If an employer secures payment of compensation [under KWCA], the liability of such employer under this chapter shall be exclusive." Ky. Rev. Stat. Ann. § 342.690(1). The *Grego* Court, predicting how the Kentucky Supreme Court might rule, held that

> Based on the plain language of KRS 342.690(1) and the Kentucky courts' long history of interpreting the Workers' Compensation Act to prohibit tort actions grounded in negligence between an employer and employee . . . the exclusivity provision of Kentucky's Workers Compensation Act bars negligent supervision claims between an employer and employee.

239 F.Supp.2d at 683 (citing *Bischoff v. Sears, Roebuck & Co.*, No. 87-6173, 861 F.2d 719 (6th Cir. Oct. 28, 1988) (unpublished)). The Kentucky Court of appeals later confirmed this interpretation, explaining that when a plaintiff asserts "any theories of liability based on negligence [asserted by an employee against an employer], for example, negligent hiring . . . , negligent supervision . . . , and a negligent failure to provide a safe workplace, . . . relief is limited to workers' compensation by the exclusive remedy of KRS 342.690(1)." *Estes v. Carpenter Co.*, Nos.2003-CA-000090-MR and 2003-CA-000190-MR, 2004 WL 2633544, at *7 (Ky. Ct. App. Nov. 19, 2004) (citations omitted).

Plaintiff sets forth a strong argument that the KWCA cannot be the exclusive venue for relief because Plaintiff does not assert a compensable injury under the statute. Injury as defined by the statute does not include stress-related or mental distress damages, or loss of wages due to defendant's negligence which was not a direct result of some physical injury. *See* KRS 342.0011(1).

Plaintiff only alleges actual and emotional damages which were not the result of physical injury; as stated, these damages are not compensable under KWCA. Defendant does not address this argument in its reply.

The Court finds Plaintiff's common law claims for negligent supervision and retention are barred by the KWCA. Plaintiff, however, is not left without a remedy; Plaintiff has pursued claims for emotional and mental damages under both Title VII and the Kentucky Civil Rights Acts. *Wallis v. NPC International, Inc.*, No. 5:06-cv-00058-R, 2007 WL 923091 at *3 (W.D.Ky. March 21, 2007); *Meyers v. Chapman Printing Co., Inc.*, 840 S.W.2d 814, 819 (Ky. 1992) ("the workers' compensation statute preempts only common law tort claims and does not preempt a statutory civil rights claim.")

Regardless, Plaintiff's claims for negligent supervision and retention rely upon a finding that "the City of Princeton knew or should have known that Rocky Howton was creating a hostile work environment, and it failed to supervise and control him, and in addition, allowed Rocky Howton's employment to continue after it knew such a hostile working environment existed." Pl.'s Resp. Br. 33. The Court has already found such a hostile working environment did not exist; therefore, Plaintiff's claims must fail.

Furthermore, Plaintiff's claims fail on a factual basis. Plaintiff has presented no evidence that Defendant failed to supervise Howton or negligently retained him. In fact, the record reflects that after Defendant became aware of Plaintiff's allegations of sexual harassment Howton was transferred to another location. Plaintiff testified that at that time all harassment ended. Plaintiff has failed to establish harassment based on sex after Howton was transferred back. There is no basis for a claim for negligent supervision or retention.

For these reasons, summary judgment is granted.

**CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED. All claims against Defendant are dismissed.  An appropriate order shall issue.